EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Jessenia González Rivera<br><br>Peticionaria | Certiorari<br><br>2021 TSPR 108<br><br>207 DPR ____ |

Número del Caso: CC-2021-363

Fecha: 22 de julio de 2021

Tribunal de Apelaciones:

    Panel IX

Abogado de la parte peticionaria:

    Lcda. Monique J. Díaz Mayoral

Abogados de la parte recurrida:

    Lcdo. Michael Corona Munoz
    Lcdo. Fernando Gattorno Jirau

Materia: Resolución del Tribunal con Voto de conformidad y Voto particular disidente.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| El Pueblo de Puerto Rico Recurrido v. Jessenia González Rivera Peticionaria | CC-2021-0363 | Certiorari |
|---|---|---|

Sala Especial de Verano integrada por la Jueza Presidenta Oronoz Rodríguez, la Jueza Asociada señora Pabón Charneco, el Juez Asociado señor Rivera García, el Juez Asociado señor Feliberti Cintrón y el Juez Asociado señor Estrella Martínez

RESOLUCIÓN

En San Juan, Puerto Rico, a 22 de julio de 2021.

A la petición de certiorari, no ha lugar. Examinada la Moción Informativa, presentada por la parte peticionaria, este Tribunal se da por enterado.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Rivera García emitió un Voto de conformidad, al cual se unieron la Jueza Asociada señora Pabón Charneco y el Juez Asociado señor Feliberti Cintrón. El Juez Asociado señor Estrella Martínez emitió un Voto particular disidente, al cual se unió la Jueza Presidenta Oronoz Rodríguez.

José Ignacio Campos Pérez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| El Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Jessenia González Rivera<br><br>Peticionarios | CC-2021-0363 | Certiorari |

**Voto de Conformidad emitido por el Juez Asociado señor RIVERA GARCÍA al cual se une la Jueza Asociada señora PABÓN CHARNECO y el Juez Asociado señor FELIBERTI CINTRÓN.**

En San Juan, Puerto Rico, a 22 de julio de 2021.

> **"La justicia no será servida hasta que aquellos que no están afectados estén tan indignados como los que lo están".**
> -Benjamin Franklin.

Es evidente que el caso que nos ocupa ejemplifica hechos que provocan el más alto grado de indignación y el reclamo enérgico de nuestro pueblo para que se imparta verdadera justicia.

Se ha dicho que el valor *justicia*, como esencialmente superior, irradia con fuerza sobre las fuentes del *Derecho*. Por ello está presente en la creación de las diversas normas jurídicas escritas, incluyendo las legislativas, ejecutivas, administrativas y municipales, pero se encuentra también, en las fuentes no escritas, como lo son

el uso, la costumbre y los principios generales del *Derecho*. Pero aún más trascendental, es reconocer que en común todas estas reciben del valor superior *justicia* su savia y su esencia. Es precisamente por ello que se emplea en la jurisprudencia como sinónimo de equidad, proporcionalidad, razonabilidad, igualdad, legalidad y, en general, como justificación máxima de todo precepto legal. En esta ocasión, invocamos esta máxima superior para reafirmar el proceder del Poder Judicial sobre los procedimientos de naturaleza penal.

Hoy dos distinguidos miembros de esta Sala de Verano pretenden, sin fundamento alguno, adentrarse en una alegada justificación para revisar un veredicto unánime de un jurado que encontró culpable a la Sra. Jessenia González Rivera de los delitos de asesinato en primer grado, por la muerte de su niña menor de dos años y tentativa de asesinato por los daños ocasionados a su otra hija de la misma edad. Así también, procuran revisar la sentencia confirmatoria de un ilustre panel del Tribunal de Apelaciones.

De entrada, debo puntualizar que las premisas inarticuladas y basadas en un **contexto totalmente especulativo** son insostenibles ante la abrumadora prueba presentada por el Ministerio Público que demostró más allá de duda razonable la culpabilidad de la madre convicta.

Una vez más, la minoría de esta Sala de Verano intenta usurpar la función judicial que le compete a los foros de primera instancia en el ejercicio de la evaluación de la

prueba y la adjudicación de la responsabilidad penal. Se olvidan de que los foros revisores debemos considerar que los juzgadores de hecho en primera instancia están en mejor posición para apreciar y aquilatar la prueba, así como los testimonios vertidos en el juicio. Con este proceder, se apartan indiscriminadamente del arraigado principio que la apreciación imparcial de la prueba del foro sentenciador merece la mayor deferencia y respeto por parte de los foros revisores.

Del voto disidente, observamos la tentación de descartar arbitrariamente el criterio del juzgador de los hechos sin ápice alguno que apoye tal determinación.

Por otro lado, aluden livianamente a supuestas violaciones al debido proceso de ley y se olvidan, tal vez de forma selectiva y suspicaz, que las protecciones procesales y sustantivas que emergen de la Constitución Federal y Estatal son fuentes legitimadoras de la autoridad del Estado para condenar y castigar cuando un ciudadano comete un crimen. En esta ocasión la prueba presentada habla por sí sola. Veamos.

Los foros inferiores al ponderar la robusta prueba presentada en el caso de marras determinaron que el Estado probó más allá de toda duda razonable que la peticionaria actuó de manera intencional al causar la muerte de su hija. No obstante, la parte peticionaria nos invita a concluir desacertadamente que la muerte de la niña se debió a su malnutrición por la mera negligencia. En un intento

claramente conveniente, aduce que el testimonio de la doctora Luciano Ortega sobre el estado mental de la peticionaria debió ser suficiente para justificar que se le impartiera al jurado una instrucción sobre homicidio negligente. No le asiste la razón.

Según surge de la prueba presentada, la peticionaria fue orientada por la nutricionista del Programa WIC, sobre la necesidad de alimentar a las menores y se le advirtió, durante su última visita médica en el Programa WIC, de la preocupante situación de desnutrición en la que se encontraban las menores. La peticionaria también recibía asistencia del Estado para adquirir alimentos, servicios de salud y vivienda. Contrario a lo planteado en el Voto Disidente, no cabe duda de que la peticionaria no estaba desprovista del sustento básico para su familia. Por lo tanto, tampoco cabe duda que actuó **con conocimiento** y estaba consciente de que la muerte de las menores era una consecuencia prácticamente segura de la privación deliberada de alimentos. En ese sentido, es forzoso concluir la improcedencia del delito de homicidio negligente.

Como correctamente señaló el Tribunal de Apelaciones, la muerte de la menor no se trató de un descuido momentáneo, sino de un patrón de conducta reiterada. Tampoco trató meramente de la falta de algunos nutrientes o de porciones inadecuadas. Según reveló el protocolo de autopsia de la niña fallecida, Jeyshlian no había recibido alimentos por más de una semana. Mas grave aún, el informe médico forense

reveló la presencia de material sintético en su estómago. Según se desprende de la opinión de la patóloga, debió haber transcurrido varias semanas sin que la niña recibiera alimento; alimentándose del entorno, como de un relleno del *mattress* o almohada. Es decir, se alimentó hasta lo último de este material porque, según reveló la autopsia, al momento de la muerte la niña, su estómago aun contenía ese material.

A la luz de esas circunstancias, el testimonio de la Dra. Ortega es insuficiente en derecho para requerir instruir al jurado sobre un homicidio negligente. Pues la prueba presentada a todas luces demostró que la malnutrición severa fue la causa de la muerte de la niña como resultado del síndrome de maltrato infantil. Según se desprende del testimonio pericial, este síndrome consiste en traumas provocados a un niño por actos de violencia, que son repetitivos e intencionales.

Por otro lado, y en lo referente al Síndrome de la Mujer Maltratada que aduce el voto particular disidente, según surge del mismo testimonio de la Dra. Ortega, esta reconoció que las víctimas de violencia doméstica se alimentan y alimentan a sus hijos. Es decir, cómo es posible especular sobre este síndrome cuando de la misma prueba presentada se sostiene su improcedencia. Como hemos reiterado, el Síndrome de la Mujer Maltratada se invoca, como una defensa, en casos en que una mujer, víctima de maltrato, es acusada de la muerte de su cónyuge o compañero.

Pueblo y. González Romén, 138 DPR 691, 701 (1995). Además, según hemos expresado, al igual que en foro federal, la norma mayoritaria imperante en casos de esta naturaleza se requiere no sólo que el testimonio pericial sobre el "síndrome de mujer maltratada" sea precedido por evidencia de la evaluación psicológica de la acusada a esos efectos, sino que dicha prueba pericial sea presentada dentro del contexto de una legítima defensa propia. En consecuencia, esta defensa claramente es inaplicable a la presente situación de hechos.

Así las cosas, es evidente que, ante la crueldad del crimen cometido contra esta niña y su hermanita, tenemos que ser implacables dentro de los contornos que rigen nuestro ordenamiento jurídico penal.

Es hora de imprimirle vigencia y validar con nuestras acciones el genuino grito de nuestro pueblo para desterrar la impunidad. Es un imperativo reafirmar el compromiso de defender y proteger las víctimas del crimen. No basta con invocar una retórica hueca a favor de las víctimas. La verdadera defensa de todo ciudadano que enfrenta las penurias de la criminalidad se demuestra con acciones afirmativas y enérgicas de aquellos que tenemos el privilegio de servirle a nuestra sociedad desde el Poder Judicial.

En atención a las consideraciones y fundamentos enunciados, estoy conforme en denegar la expedición del

recurso de certiorari presentado por la peticionaria González Rivera.


                                        Edgardo Rivera García
                                           Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| El Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Jessenia González Rivera<br><br>Peticionaria | CC-2021-0363 | Certiorari |
| --- | --- | --- |

Voto particular disidente emitido por el Juez Asociado señor ESTRELLA MARTÍNEZ, al cual se une la Jueza Presidenta ORONOZ RODRÍGUEZ.

En San Juan, Puerto Rico, a 22 de julio de 2021.

> "*Una justicia llevada demasiado lejos puede transformarse en injusticia*".
>
> – François-Marie Arouet, Voltaire

La Sra. Jessenia González Rivera fue acusada y juzgada por la muerte de una de sus hijas, la cual presentaba un cuadro de desnutrición severa. Se trata de un retablo lamentable que retrata vívidamente la crisis que azota a nuestra sociedad. No cabe duda de que las acciones u omisiones de la Peticionaria conllevan consecuencias

jurídicas en diversos ámbitos.

Ahora bien, como custodios del Derecho, la función de este Tribunal es una compleja que se extiende mucho más allá de los confines de determinar la culpabilidad de una persona acusada e imponerle responsabilidad penal. Ello, pues, nuestro ordenamiento exige que cualquier determinación de responsabilidad penal esté arraigada en los cimientos de un procedimiento celebrado a la luz de todas las garantías constitucionales que cobijan a las personas.

Una vez más, esta Sala Especial de Verano deniega la expedición de un recurso que hubiera permitido que el Pleno de este Tribunal pautara y precisara el alcance de importantes figuras jurídicas en el ámbito del Derecho Penal que enmarcan la controversia ante nos. Aunque pudiera colocarnos en una posición incómoda, este caso requería que ejerciéramos nuestra función de velar por el fiel y más riguroso cumplimiento con los preceptos del debido proceso de ley. A mi juicio, ello no ocurrió.

La lamentable muerte de la niña pudo haber sido producto tanto de eventos cargados de intención criminal como de actos puramente negligentes. Tal concurrencia de elementos es, precisamente, lo que competía al Jurado determinar. Por consiguiente, me resulta contrario al Derecho que no se hubiera dado una instrucción al Jurado a estos fines, aun en presencia de prueba que, de haber sido creída, pudo haber concretado un homicidio negligente.

Esta controversia confirma, de nuevo, la importancia de

no pautar Derecho en el vacío y la necesidad imperante de atemperarlo a las realidades sociales y el contexto histórico dentro del cual se produce. Sin entrar a adjudicar la aplicabilidad de defensa alguna en este caso en particular, la más somera de las investigaciones revela una plétora de literatura científica que afirma de forma contundente que los efectos del maltrato físico y psicológico en una mujer no se limitan a su relación de pareja, sino que también permean otros ámbitos de su vida.

Es decir, es enteramente posible que los actos negligentes o maltratantes de una madre en contra de sus hijos se manifiesten como secuelas de su experiencia con el Síndrome de la Mujer Maltratada, lo cual podría incidir en el grado de responsabilidad penal. **En consecuencia, ante el umbral de un momento histórico en el que confrontamos la forma insidiosa, sistemática y sistémica en la que se manifiesta la violencia en contra de la mujer en nuestra sociedad, resulta imprescindible atender el asunto en todas sus dimensiones, incluyendo en controversias de Derecho penal como la que hoy nos ocupa.** No se trata de siempre darle la razón a personas de determinado género, sino de brindarle a toda persona —en las buenas y en las malas— el Derecho que les ampara de que atendamos debidamente los señalamientos de error que son genuinamente invocados y que ameritan discusión.

En fin, por las razones antes expuestas, hubiera expedido el recurso de epígrafe en servicio de nuestro

mandato de velar porque la responsabilidad penal impuesta a la Peticionaria fuese **proporcional y conforme a Derecho**. Ello, pues, esta controversia representaba un escenario idóneo para revisitar la jurisprudencia relacionada al Síndrome de la Mujer Maltratada, de modo que no se perpetuaran esquemas que no toman en cuenta el impacto del maltrato a la mujer en otras esferas que trascienden la relación de pareja. Asimismo, y no menos importante, ante el cuadro de acciones y omisiones que laceran la integridad y hasta la vida de muchos menores de edad en Puerto Rico, este caso nos brindaba la oportunidad de repasar nuestros precedentes con respecto a los diversos delitos que prohíben tales conductas. Ante el curso de acción contrario adoptado por una mayoría de la Sala Especial de Verano, disiento.


                                        Luis F. Estrella Martínez
                                            Juez Asociado